HARRY J. HILTON *vs.* EDWIN A. SHEPHERD, and another.

SAME *vs.* SAME.

Penobscot.    Opinion November 25, 1898.

*Infancy. Sales. Rescission. Ratification.  R. S., c. 111, § 2.  Stat. 1845, c. 166.*

A minor bought horses for which he gave his note and other considerations. After he became of age, he first used the horses in his business, and then sold them as his own. In a suit brought by him to recover the consideration paid, he claimed that he had rescinded the contract of purchase,—but prior to his use and sale of the horses. *Held;* that the conduct of the plaintiff in the use and sale of the horses was not only an abandonment of the attempted rescission, but was a ratification of the original bargain.

*Held,* also, that R. S., c. 111, § 2, does not require proof of ratification to be in writing, when one seeks to recover back the consideration paid by him on a contract made while he was a minor.

ON REPORT.

Two actions, one assumpsit, and the other trover, involving the same facts, tried together.

The declaration in assumpsit is as follows:—

In a plea of the case:   For that the said Edwin A. Shepherd and Nial S. Wheeler, then copartners under the firm name of Shepherd & Wheeler, at said Dexter, on the 18th day of June, 1896, bargained and sold to the plaintiff who was then and there a minor, as defendants well knew, two matched, dark bay horses, for a price agreed to be two hundred and fifty dollars; that, as a part of said contract the plaintiff then and there paid to said defendants the sum of twenty-five dollars in money, and also transferred and delivered to the defendants a certain promissory note dated at St. Albans, in April, 1896, signed by one Welch and made payable to Fred Lucas or order, and by said Lucas indorsed and delivered to the plaintiff, said note being for the sum of twenty-five dollars payable in six months from date, with interest, value received.   That plaintiff discovering that he had been

defrauded by said defendants in said contract, sometime in the early fall of said year, 1896, verbally notified said defendants of his intention to rescind said contract, offering to return said two matched, dark bay horses, and requesting the return by them of the twenty-five dollars so paid them, and said note and other property they had received of him under said contract, which offer and request said defendants refused, denying plaintiff's right thereto. And the plaintiff avers that said defendants have collected and received payment of said promissory note given by said Welch, and of the interest due thereon. He further avers that said defendants have asserted title to and have retaken into their own possession said two matched, dark bay horses and now hold the same. Wherefore by reason of said plaintiff's minority when said contract was made and of his rescission of the same, his offer to return said horses to said defendants and his request for the return to him of said money, note and other property so received by them, of defendants refusal to comply with same and their collection of said note and interest, and retaking said horses as their own property, said defendants became liable and in consideration thereof then and there promised the plaintiff to pay him said twenty-five dollars received directly from him and said twenty-five dollars and interest received by them as the proceeds of said promissory note given by said Welch.

The declaration in trover counted on a conversion of the mare and plaintiff's own note for $125.

The facts are stated in the opinion.

*Thos. H. B. Pierce*, for plaintiff.

*F. D. Dearth*, for defendants.

SITTING: PETERS, C. J., EMERY, HASKELL, WISWELL, SAVAGE, FOGLER, JJ.

SAVAGE, J. Two cases between the same parties. June, 1896, the plaintiff, then a minor, made a trade with the defendants. He received from them two horses. He gave them in payment $25 in cash; a note for $25, signed by one Welch and then owned by the

plaintiff; a mare; and his own note for $125, secured by a mortgage on the two horses he had bought of the defendants. The plaintiff became of age October 10, 1896. He claims that he has rescinded the contract, and he brings these actions to recover back the consideration,—one, assumpsit for the cash paid and for the proceeds of the Welch note which the defendants collected; the other, trover for the mare and his own one hundred and twenty-five dollar note. The case comes to us on report of the evidence on behalf of the plaintiff, with the stipulation that "if the action is maintainable, it is to stand for trial; otherwise a nonsuit is to be entered." The question is not exactly whether there may be any evidence upon which a verdict for the plaintiff could have been rendered, but whether upon all the evidence a verdict for the plaintiff could be sustained.

The history of the controversy subsequent to the trade appears to be as follows: In September, 1896, the plaintiff, being yet a minor, brought one of the horses back to the defendants and claimed that that horse was unsound and not such as it had been represented to be. The defendants, however, did not take the horse back, and the plaintiff continued in possession of both horses. In January, 1897, one of the defendants was at plaintiff's home. The plaintiff said he should not pay the one hundred and twenty-five dollar note; offered a compromise by losing fifty dollars on the trade, or to let the defendants have the horses back, they to restore the property he had let them have. The horses were then in the stable near by. To the offer of compromise, the defendant then present said, "no, he would have the whole." The plaintiff asked the defendant to come in and look at the horses, but the defendant refused. The plaintiff's witness, his father, testifies that at the January interview, the plaintiff made the statement that "he was a minor at the time he signed the note and was not liable." The plaintiff himself testifies that nothing was said about minority that day. Both agree that the only ground on which the plaintiff then claimed the right to rescind was that the horses were not as they had been represented to be. Subsequently the plaintiff hired out these horses to go into the woods with himself, where they worked

for forty-eight days. Later, the plaintiff sold the horses outright to one Hurd for $150. Afterwards, the defendants took the horses from Hurd, on what ground does not appear, but presumably, we think, claiming under their mortgage.

It is urged by the defendants that the attempted rescission in January, 1897, was ineffectual, because the horses were not restored or sufficiently tendered. The plaintiff answers that the defendants waived tender by their words and conduct, on the principle that it is not necessary to make a tender to a party who in advance announces that he will not receive it.

But we do not deem it necessary to determine the sufficiency of these claims on the one side and the other. If it be assumed that the plaintiff attempted a rescission, and that a tender of the horses was made or waived, it is the opinion of the court that the subsequent conduct of the plaintiff, which was after he became of age, must be held to be not only an abandonment of the attempted rescission, but also a ratification of the original bargain. Not only did he hire out the horses for work in the woods, which alone might not be decisive, but he sold the horses as his own. It is not questioned but that such conduct by the plaintiff would amount to a ratification at common law, but the plaintiff claims that under our statute, R. S., Chap. 111, § 2, such a ratification must be in writing in order to bind a minor. This section reads: "No action shall be maintained on any contract made by a minor, unless he, or some person lawfully authorized, ratified it in writing after he arrived at the age of twenty-one years, except for necessaries, or real estate of which he has received the title and retains the benefit." The plaintiff claims that this statute applies not only when an action is brought against one, upon a contract made by him during minority, but also when a ratification is set up as a defense to an action brought by him to recover back the consideration. The common law doctrine relating to the liability of minors upon their contracts was designed for their protection, and it is clear to us that this statute was intended as an additional protection. If it be held that by this statute, one who seeks to enforce a contract made by him when a minor must first ratify it in writing, it has little

significance, for all he will need to do in any case is to reduce his ratification to writing before bringing suit. Thus the statute is no protection to him. On the other hand, if the other party to the contract seeks to enforce it against him, the statute is a protection. Such an action cannot be maintained on oral and uncertain proof of ratification, but only on proof of his deliberate written ratification.

Now, how is it in case the minor wishes to repudiate the contract and recover back the consideration? Can it be said that a minor who has received the articles purchased by him, who has kept and used them after he becomes of age, and then has sold them, is not barred from recovering back the consideration, simply because he has not ratified the contract in writing? We think not. The statute would thus become a sword instead of a shield. In the hands of the dishonest it would become an instrument of robbery. It would be rank injustice to permit the minor, after he becomes of age, still retaining the property or having sold it, to recover back also the price paid for it. On the ground of common honesty, he should be estopped. We think such a result was not intended by the legislature. An examination of the original statute, Laws of 1845, chap. 166, which in a condensed form now appears as R. S., Chap. 111, § 2, above quoted, only confirms this opinion. That statute reads as follows: "No action that may be brought after the passage of this act shall be maintained *against any person upon a contract made while a minor*, unless the same is ratified in writing, signed by the party to be charged by said contract." By the express language of this statute, the necessity of written ratification is limited to actions *against* persons on contracts made by them while minors. It is not at all applicable to actions brought by them to recover back the consideration paid. And we think that when this statute was condensed and placed in the Revised Statutes there was no intention to change its meaning. A change in phraseology merely in the revision of a statute is not deemed to be a change in the meaning. *Hughes* v. *Farrar*, 45 Maine, 72; *Cota* v. *Ross*, 66 Maine, 161. Though this precise point has not been raised since the adoption of the statute in 1845,

all cases decided since then seem to be in harmony with the construction placed upon the statute in this opinion. *Robinson* v. *Weeks*, 56 Maine, 102; *Bird* v. *Swain*, 79 Maine, 529; *Neal* v. *Berry*, 86 Maine, 193.

Upon the evidence found in the report, therefore, the actions cannot be maintained.

*Plaintiff nonsuit in each case.*